[Birmingham Railway, Light & Power Co. v. Murphy.]

# Birmingham Railway, Light & Power Co. *v.* Murphy.

## *Electrical Injury.*

(Decided Nov. 24, 1911. ·56 South.. 817.)

1. *Electricity; Injury; Care Required; Negligence.*—One using lawfully electricity in the operation of a street railway system is bound to exercise such constant care as a man of reasonable prudence would exercise, considering the obligations to protect persons from danger, and the care must be commensurate with the danger; and a want of proper care in view of the circumstances will constitute negligence.

2. *Same; Evidence.*—Where the action was for injury to a child by coming in contact with an electrically charged wire, hanging down over a street in the residence portion of the city, and the evidence showed that the defect had existed for three days before the injury, and that cars had constantly passed the defect during that time, that the most casual inspection would have discovered the defect, which was open to ordinary observation, and that three days before the accident, another had been injured by the same wire, and the company offered no evidence that the defect did not occur by its negligence, or that it could not reasonably have been discovered and repaired prior to the accident, the charge of the court on simple negligence was as favorable to the defendant as could be.

3. *Same; Notice of Defect.*—The evidence examined and stated and held sufficient to justify a finding that the company had actual notice of the dangerous condition of the wire prior to the accident.

4. *Same; Evidence.*—Where it appeared that the company had an agent with authority to inspect its wires and remedy the defect, evidence that prior to the accident a witness had gone to the company's office to give notice of the dangerous condition, and that he was directed to a person engaged in writing in the office at the time, and that the witness gave him notice of the dangerous condition, and that the person replied "much obliged, I will attend to it," was properly admitted to show actual notice to the company of the danger prior to the accident.

5. *Same; Wantonness; Jury Question.*—The evidence in this case stated and examined and held sufficient on which to base a finding that the company was guilty of wanton negligence in permitting the dangerous condition to exist.

6. *Negligence; Wantonness.*—Wantonness is a conscious failure by one charged with the duty to exercise due care to prevent an injury, after a discovery of the peril, with knowledge of the probable result of such failure, and it is immaterial whether such failure is occasioned by an act of omission or commission; one may be guilty of wanton misconduct without actual intention to injure.

[Birmingham Railway, Light & Power Co. v. Murphy.]

7. *Charge of Court; Questions for Jury or Court.*—Where the facts are admitted or are undisputed, and are such that men of ordinary intelligence may reasonably draw different conclusions or inferences therefrom, the issue is generally for the jury; it is only when the facts are such that all reasonable conclusions must be the same that the question becomes one for the court.

8. *Same; Effect of Evidence.*—A trial court has no right, under the statute, to charge on the effect of evidence of its own motion.

9. *Same.*—In an action for personal injury received from an electrically charged wire a charge asserting that if the plaintiff is entitled to recover, he would be entitled to recover punitive damages, on the theory that the injury was wantonly inflicted as alleged in the complaint; and a charge that it is within the discretion of the jury finding for plaintiff, to allow punitive damages, without limiting the recovery to such count, when considered in connection with other charges defining wantonness declaring that the question of punitive damages is in the sound discretion of the jury, defining the measure of compensatory damages, and authorizing punitive damages on the finding by the jury that the wrong doer is deserving of punishment, are not charged on the facts; and if possessing misleading tendencies, are not grounds for reversal in the absence of request for explanatory charges.

10. *Same; Oral Charge; Construction.*—The oral charge must be construed as a whole, and if when so construed it correctly states the law, a reversal will not be granted because a separate part thereof, standing alone and unexplained, is erroneous.

11. *Damages; Personal Injury; Punitive Damages.*—Where the jury gave to one suing for personal injury a sum sufficient to compensate for the actual damage sustained, they gave him all that he was entitled to as a matter of right, and any amount in addition thereto because of the wrongdoer's wantonness was added simply as a punishment to the wrong-doer.

12. *Same; Actual and Punitive.*—Whether injuries to a child by contact with a live wire suspended over a street was serious or only painful, bears on the question of the amount of actual damages, and also on the question of wantonness in permitting the wire to remain where it was dangerous to human life, in which case the punishment for wantonness could properly be greater than if the wire was not a dangerous instrument, but one calculated to produce more or less painful injuries.

13. *Appeal and Error; Verdict; Conclusiveness.*—As to the extent of the injuries sustained by one suing for personal injury, the verdict is conclusive on appeal from an order refusing a new trial, unless the record affirmatively shows that the jury did a palpable wrong.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Willie Murphy, a minor, against the Birmingham Railway, Light & Power Company, for damages for injuries sustained by coming in contact with an

electrically charged wire left hanging in the street. Judgment for plaintiff and defendant appeals. Affirmed.

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant. The court erred in refusing affirmative charge as to the 2nd count.—*Sou. Ry. v. Bunt,* 131 Ala. 594; *Sands v. L. & N.* 156 Ala. 328; *Sou. Ry. v. Stewart,* 51 South. 325; *L. & N. v. Brown,* 121 Ala. 226; *S. S. S. & I. Co. v. Campbell,* 158 Ala. 444; *B. R. L. & P. Co. v. Glover,* 152 Ala. 498. Counsel discuss the charges given for appellee together with the oral charge of the court excepted to, but without citation of authority. They insist that the court should have granted a new trial, but without citation of authority.

BOWMAN, HARSH & BEDDOW, for appellee. Wantonness, as well as any other fact may be inferred without direct proof that the guilty agent was conscious of his conduct.—*C. of Ga. v. Partridge,* 136 Ala. 594; *Sou. Ry. v. Bush,* 122 Ala. 487; *A. G. S. v. Hill,* 90 Ala. 72; *Sou. Ry. v. Shelton,* 136 Ala. 191; *B. R. & E. Co. v. Smith,* 121 Ala. 350. Electricity is a dangerous element, and must be handled with care commensurate with its danger.—*So. B. T. Co. v. McTyer,* 137 Ala. 601; *Home T. Co. v. Fields,* 150 Ala. 313; *McKay v. So. Bell T. Co.* 111 Ala. 337. On these authorities, it is apparent that the court correctly refused the affirmative charge as to the wanton counts. The exceptions to the oral charge are not shown to have been taken before the jury retired.—*Reynolds v. The State,* 68 Ala. 507; *Montgomery v. Gilmer,* 33 Ala. 133; 15 How. 160. The exception is so worded that it constitutes but a single exception, and if any one of the several parts of the charge was good, the exception falls.—*McIntyre v. Hairston,* 152

Ala. 251; *Town of Vernon v. Wedgeworth*, 148 Ala.
490; *Sou. Ry. v. Douglass*, 144 Ala. 359. Counsel dis-
cuss other assignments of error, but without citation
of authority.

DE GRAFFENRIED, J.—The appellant owns and
operates the street railway system of the city of Birm-
ingham, and uses electricity as its motive power. The
evidence tended to show that a wire charged with elec-
tricity by contact with the trolley wire by which the
cars were run, hung down over one of the streets in a
residence portion of the city, either touching the ground
or in close proximity to it, and the appellee, a child of
five years of age, came in contact with it, and was in-
jured. The jury was authorized to infer from the tes-
timony of the appellee that the injury was painful and
serious, but the testimony of appellant tended to show
that the injury was slight.

The evidence, without conflict, showed that the wire
was hanging over the street, as above stated, on Satur-
day, the 26th day of June, and that on that day a boy
was burned by coming in contact with it, and that it
remained in that position until Tuesday, the 29th of
June, when the appellee came in contact with it, and
was injured, as above stated. The evidence further
showed, without conflict, that about 8 o'clock on Mon-
day morning, the 28th of June, the father of the boy
who was burned on the previous Saturday called at the
office of the appellant, in the city of Birmingham, and,
seeing a lady in the business portion of the office, whom
the evidence tended to show was an employe of appel-
lant, told her that he desired to make a report to appel-
lant about the condition of the wire, and that she di-
rected him to see a man in the rear part of the business
office and make the report to him; that he did as di-

rected, and reported the condition of the wire to a man engaged at the time in writing, and the man said: "Much obliged, he would move it"—or simply, "Much obliged;" that on the 29th of June, and after appellee was injured, some one drove up to the wire, cut it down, and removed it. There was no evidence that the wire from which appellee received his injuries was hanging down, as above stated, prior to Saturday, the 26th day of June, and the evidence showed that the wire had fallen into the hanging position above described, because the arm or leader which held it in its proper position had become detached, in some way, from the pole on which it was strung.

1. The appellant, in the operation of its business, employed and had a right to employ electricity, one of the most insidious and violent, and at the same time one of the most useful, forces known to man. It is, to use the language of the Supreme Court of North Carolina, in the case of *Mitchell v. Raleigh Electric Co.*, 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. Rep. 735, "the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism—if wire can be classified as such—in common use. In adhering to the wire, it gives no warning or knowledge of its deadly presence. Vision cannot detect it. It is without color, motion, or body. Latently and without sound it exists, and, being odorless, the only means of its discovery lies in the touch, which, as soon as done, becomes its victim." While the law does not make those who are permitted to use this deadly agency insurers against all loss that may be occasioned thereby, it does

require of them the exercise of that constant vigilance and care which a man of reasonable prudence should exercise in respect of such a dangerous agent, taking into consideration his obligation to protect his fellows from all peril or danger which, by the exercise of reasonable prudence, can be avoided.—*Southern Bell Telephone & Telegraph Co. v. McTyer*, 137 Ala. 612, 34 South. 1020, 97 Am. St. Rep. 62; *Norfolk Ry. & Light Co. v. Spratley*, 103 Va. 379, 49 S. E. 502; *Haynes v. Raleigh Gas Co.*, 114 N. C. 203, 19 S. E. 344, 26 L. R. A. 810, 41 Am. St. Rep. 786.

Reasonable prudence requires that, where the danger is known to be great, the care and watchfulness shall be commensurate with it, and it is a legal truism that what, under some conditions, will amount to ordinary care will, under other conditions, amount to even that reckless disregard of the rights of others which, in law, is wantonness.—*Grand Trunk Ry. v. Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Birmingham R., L. & P. Co. v. Williams*, 158 Ala. 381, 48 South. 93; *Matson v. Maupin*, 75 Ala. 312. "Negligence consists in a want of proper care, which always depends upon the circumstances in a particular case. Greater care is required to preserve a diamond than an ordinary chattel."—*Carter v. Chambers*, 79 Ala. 230.

In this case there is no question of contributory negligence. The appellee was confessedly injured by a defect in the wires of appellant. That defect existed for three days prior to appellee's injury. During that period, the cars of appellant were constantly passing the defective point, and the defect, if the evidence is to be believed, was open to ordinary observation. This defect existed on a residence street of a populous city. The most casual inspection by appellant would have dis-

covered the defect. Three days before the injury of appellee, another boy was injured by this same defective wire. Appellant was under the duty to the residents of Birmingham of keeping its wires in such condition as not to subject them to needless peril. It did not do so, and it offered no evidence tending to show that the break did not occur by reason of its negligence, or that, if the break occurred through no neglect on its part, it could not reasonably have been discovered and sooner repaired. In our opinion, under the evidence, on the subject of simple negligence, the charge of the court below was certainly as favorable to appellant as the law as applied to the facts of the case required it to be; and the court committed no error in submitting the question of simple negligence vel non to the jury in the various phases in which that question was presented by the pleadings.—*Haynes v. Raleigh Gas Co., supra; City Electric R. R. Co. v. Conery,* 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570, 54 Am. St. Rep. 262; Joyce on Electricity, §§ 438, 606; *Trulock v. Wiley* (C. C. A.) 187 Fed. 956; *Clements v. A. G. S. R. R. Co.,* 127 Ala. 174, 28 South. 643; *Norfolk Ry. & Light Co. v. Spratley, supra.*

2. It is insisted by appellant that the evidence by which the appellee sought to show that appellant had knowledge of the defective condition of the wire prior to appellee's injury was irrelevant and illegal; and that therefore there was no evidence from which the jury were authorized to infer that appellant had actual knowledge of the defect prior to appellee's injury. That the appellant had an agent, possessing the authority to inspect the wires and remedy defects or breaks in them, was necessary to the orderly and proper conduct of its business. Undoubtedly it had such an agent. Did ap-

pellee's evidence tend to show that this agent had knowledge of the defect prior to appellee's injury?—*S. & N. A. R. Co. v. Henlein*, 52 Ala. 606, 23 Am. Rep. 578..

The evidence tends to show that the party who gave the information, if he gave the information, of the defective wire, on the day before appellee's injury, not only had the right to give it, but that he had the right to demand that appellant repair the break. If his evidence is to be believed, he went to the place where he had a right to expect this agent to be, i. e., the place of business of appellant. Upon inquiry there, he was directed to a man, at that time engaged in writing in appellant's office, and evidently an employe of appellant. He gave to that man the information, and that man the evidence tends to show, said: "Much obliged. I will attend to it." The next days the matter *was* attended to, and the wire was moved. It is plain that the jury was authorized to infer from this evidence that the appellant had actual notice of the dangerous condition of the wire, and that the court properly admitted the above evidence as relevant to that issue, and properly submitted the question of its sufficiency to the jury. —*Tenn. R. Trans. Co. v. Kavanaugh*, 101 Ala. 1, 13 South. 283; *S. & N. A. R. Co. v. Henlein, supra.*

3. Wantonness is the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury, after the discovery of the peril, with knowledge of the inevitable or probable result of such failure. It is not material whether such conscious failure to discharge such duty is occasioned by an act of omission or commission. In the discharge of such duty, an honest effort to prevent the threatened injury is required by the law of him who is charged with the performance of such duty, and who knows of the nec-

essity of such performance. While wantonness may be inferred from an entire want of care, it does not follow that an entire want of care must be shown to establish wantonness.—*Birmingham R. & E. Co. v. Pinckard*, 124 Ala. 372, 26 South, 880; *B'ham Ry. L. & P. Co. v. Williams*, 158 Ala. 381, 48 South. 93. One may be guilty of willful or wanton misconduct without actual intention to injure, and, as we have above said, that which may, in some instances, amount to ordinary care under other conditions may amount to wanton misconduct.—*Grand Trunk Ry. Co. v. Ives, supra; Birmingham Ry. L. & P. Co. v. Williams, supra.*

In the present case, the jury were authorized to infer from the evidence that appellant had knowledge of the defect in the wire, and that it was charged with electricity, and that it knew that it was in dangerous proximity to the street for 24 hours before appellee's injury. As the defect was remedied by simply cutting and removing the hanging wire, they were also authorized to infer that for that period the appellant had knowingly maintained a dangerous situation at a point on the street, for that wire, after it fell, was, under the evidence, a useless and unnecessary appendage to appellant's lines. The fact that after receiving the information appellant could speedily have removed the danger, and that it was its duty so to do, and that it utterly failed to perform that duty until after the wire had caused suffering and, as some of the evidence tended to show, danger to a child, were matters from which the jury had the right, within their exclusive province as the triers of the facts, to conclude that appellant, in its conduct about this matter, evidenced that disregard of the requirements of the law and that recklessness of the safety and lives of others which in law amounts to

wantonness. If it be true that evidence that children were accustomed to play in an alley where a bomb which, when exploded, becomes harmless was knowingly left was a circumstance from which wantonness might be inferred by a jury, it would seem that it should certainly be a question for the jury to say whether wantonness vel non existed where there was evidence tending to show that a person had knowingly permitted a live wire, which some of the evidence tended to show was a constant and dangerous menace to adults and children alike, to remain in proximity to a residence street of a populous city for a period of 24 hours.—*Wells v. Gallagher*, 144 Ala. 363. 39 South. 747, 3 L. R. A. (N. S.) 759, 113 Am. St. Rep. 50. See, further, *Texarkana Gas & Electric Co. v. Orr*, 59 Ark. 215, 27 S. W. 66, 43 Am. St. Rep. 30.

When the facts are admitted or are undisputed, and are such that men of ordinary intelligence may reasonably differ with each other as to the conclusion to be drawn from them, such facts, as a general proposition, present matters for the determination of the jury, and not a mere question of law for the court. It is only when the facts are such that all reasonable conclusions to be drawn from them are the same that they present a mere question of law for the court.—*Trulock v. Wiley* (C. C. A.) 187 Fed. 956; *Railway v. Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Railroad v. Converse*, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213. In recognition of the above principle, the Supreme Court of Alabama, in the case of *Southern Ry. Co. v. Burgess*, 143 Ala. 364, 42 South. 35, said: "When the facts are admitted or undisputed, and the inferences from them are indisputable, or the rule of duty is fixed by law as the same under all similar circumstances, negligence is

a question for the decision of the court; but, though the facts are undisputed, when negligence is a deduction to be drawn, and which may or may not be drawn by men equally sensible and impartial, the question must be submitted to the jury." In our opinion, therefore, the question as to whether, under the facts as contained in the bill of exceptions, the appellant was or was not chargeable with wantonness was a question of fact for the determination of the jury, and not a question of law for the determination of the court.—*Southern Ry. Co. v. Burgess, supra; Houston's Case*, 83 Ala. 361, 3 South. 859; *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487.

4. The court, in its oral charge to the jury, gave its instructions on the subject of wanton negligence in the following language:

(1) "Now the character of negligence that I have been speaking about is what is called simple negligence. Now there is another theory in this case bearing upon the question of damages, in which the plaintiff seeks to recover what is called punitive or exemplary damages. Now, if you are reasonably satisfied from the evidence in this case, gentlemen, that the plaintiff is entitled to recover at all on the principles of law that I have stated, why, then, in addition to any actual damages that he would be entitled to, he would be also entitled to recover what the law calls punitive damages—that is, damages that punish, sometimes called exemplary damages—that is, damages that make an example of the individual on account of the wrong alleged to have been done. Now this is under what is called the wanton count in the complaint; that is, that they wantonly or intentionally or wilfully allowed this, or caused this thing to be done.

(2) Now wantonness may be the equivalent of a wilful or intentional wrong or injury, and if done with a

reckless disregard of the rights of the people, indiffer-
ence as to the results, and with a consciousness on the
part of those responsible for it that what they are doing
or neglecting to do·would probably result in injury to
somebody, then it may be said that they would be guilty
of such wanton conduct as would authorize the jury to
impose what is called punitive damages.

(3) "Now that, however, is left to the sound discre-
tion of the jury trying the case.

(4) "If you are reasonably satisfied from the evidence
in the case that the plaintiff is entitled to recover, then
it is within your discretion to say whether or not you
will· allow punitive damages; and, of course, if you
allow that, it is within your discretion to say how much
damage you would allow on that ground.

(5) "If you are reasonably satisfied from the evi-
dence in the case that the plaintiff is entitled to re-
cover, the measure of damages under the count on sim-
ple negligence would be what is called compensatory
damages; damages making good any loss the plaintiff
may have sustained. Now the only damage that he
could recover in a case of this sort, and on that ground,
would be on account of physical pain growing out of the
injury. And in assessing damages of that sort you have
a right to take into consideration the nature, character,
and extent of the injury, the amount of suffering, and
the probable duration of the injury and the suffering.

(6) "And, as I have said, if you think it is that sort of
a case, worthy or deserving of punishment, of being
made an example of, why then you could assess punitive
damages within your discretion."

We have, for our convenience, divided the charge into
sections. The division of the charge into sections was
not, of course, done by the trial court.

It is undoubtedly the law that a trial court has no right, ex mero motu, to charge the jury upon the effect of the evidence. Our statutes expressly prohibit courts from so doing. If sections 1 and 4 above set out contained all of the instructions of the court to the jury on the subject of exemplary damages, we would be justified in holding that the court had violated the law, and had instructed the jury on the effect of the evidence as to wantonness. But the oral charge of a court must be construed as a whole, and a judgment will not be reversed because a separate part of the charge, standing alone and unexplained, is erroneous, if the charge construed as a whole contains a correct statement of the law of the case.—*Decatur Co. v. Mehaffey,* 128 Ala. 242, 29 South. 646.

The latter part of section 1, read in connection with sections 2, 3, 5, and 6 and the charge as a whole, convinces us that the court did not intend to charge, or did not in fact charge, upon the effect of the evidence as to wantonness, and that, while the charge may have had some tendency to mislead the jury, nevertheless the jury were in all probability not actually misled thereby.

In the case of *S. & N. A. R. Co. v. Jones,* 56 Ala. 507, the bill of exceptions contains the following: "The court charged the jury of its own motion as follows: 'If the jury believe from the evidence that the ox was killed by the defendant's train, and that the engineer of the train saw the ox within 10 or 15 feet of the road, or running close by the roadbed, on a line with it, and within a few feet of the road and train as it was moving, and under circumstances indicating danger of its getting on the track, then it was the duty of the engineer to use all means in his power to frighten away the ox until the danger had ceased (of which you are to judge

from the evidence) : and, failing to do so, he was guilty of negligence, for which the defendant must respond.' "

Speaking of that charge, the Supreme Court of Alabama, through Stone, J., said: "The affirmative charge given in this case, under a severe grammatical criticism, might be construed as invading the province of the jury in pronouncing upon the effect of the evidence. We do not think, however, that such was the intention of the presiding judge. By the phrase 'failing to do so,' we think he meant, *if the engineer failed to do so;* and we think that, taken in the connection in which it was uttered, the jury so understood the expression. Such elliptical forms of expression are not unusual, either in public or private speaking, and they rarely mislead. If the charge was ambiguous or likely to mislead, it was both the privilege and duty of counsel to call the court's attention to it, so that it might be corrected.—1 Brick Dig. 342, § 99; p. 336, § 10; *Carlisle v. Hill,* 16 Ala. 398; 1 Brick Dig. 251, §§ 123, 126. Hypercriticism should not be indulged in construing bills of exceptions."

Reading the entire charge as a whole, we feel confident that in the expression in section 1 in which the court used the language, "why then, in addition to any actual damages that he would be entitled to, he would be also," etc., the court intended to say, "He *may* be also," etc.; and that in subdivision 4, after the words "entitled to recover," the court intended to say, *under the second count."* No other reasonable construction can be put upon the charge. In section 1, if our construction is not the proper one, the trial judge charges the jury that appellee is entitled to exemplary damages, and yet, in sections 3, 4, and 6, he charges the jury that exemplary damages are allowable to appellee only in their discretion; and, if our construction is not the prop-

er one, the court instructs the jury, in section 4, that if the appellee is entitled to recover, then, in their discretion, they may allow him exemplary lamages, and yet, in section 6, the court tells the jury that if they think it is a case worthy or deserving of punishment, of being made an example of, then, in their discretion, they may award exemplary damages.    The charge on wantonness may have been ambiguous, and for that reason may have possessed a misleading tendency, but, if so, the judgment should not be reversed on that account.    "Though the charge of the court may have had a tendency to mislead the jury, that is not an error which will reverse the judgment; the party excepting should have asked an explanatory charge."    *Daniel v. Bradford,* 132 Ala. 262, 31 South. 455; 1 Brick. Dig. 344, § 129, and authorities cited; 6 Mayfield's Dig. 110, §§ 140, 141, 148, and authorities cited.

5.    The verdict, in this case, was for $1,000.    The appellant made a motion in the court below to set aside the verdict and for a new trial upon several grounds, among them that the verdict was excessive.    The amount of the verdict indicates that the jury, on the issue of wantonness vel non, found, in all probability, for appellee, and that they, in the exercise of their discretion, may have penalized the appellant because of such wantonness.    As the jury, under the evidence, were authorized to determine that appellant, in this matter, was guilty, not only of simple negligence, but of wantonness, we shall in this discussion regard those subjects as conclusively settled.

When the jury assessed to appellee against appellant a sum sufficient to compensate him for the actual damages that he had suffered because of the wrong of appellant, they gave to him all that he was entitled to as

matter of right. Any amount which they added to that sum, if they added any, because of appellant's wantonness was given to the appellee, not because he was entitled thereto as a matter of right, but simply as a punishment of the wrongdoer, and to deter it and others in similar businesses from such wrongdoing in the future. The appellee became a beneficiary of this sum assessed as punishment, because he was a sufferer on account of the wantonness, and was the only party to whom it could be given.—*Birmingham Water Works Co. v. W. R. Keiley, Infra,* 56 South. 833.

The question as to whether the injuries of appellee were serious or only painful was of importance on the subject of the amount of the actual damages of appellee, and also on the question as to whether, by reason of the amount of electricity it contained, the wire, while hanging on the pole, was dangerous to human life or likely to produce serious injuries, or was simply an instrument of torture likely to produce painful but not serious injuries. If the wire was dangerous to human life or likely to produce serious injuries, the punishment of the appellant for wanton misconduct with reference to it should and would naturally have been greater than if it was not a dangerous instrument, but one simply calculated to inflict painful injuries.

Whether, when the wire, as the undisputed evidence showed, struck or caught appellee, holding him down and rendering it difficult for him to get away from it, appellee's life was in danger or his health thereby seriously threatened, whether, subsequent to that injury, and occasioned thereby, he suffered from hemorrhages or developed hysterical phenomena, and suffered, by reason thereof, the illness which appellee's testimony tended to show he suffered, or whether he was simply

burned, and suffered no other damage, as the testimony of appellant tended to show, were all deductions to be drawn by the jury, and by the jury alone. The law having committed all these matters to the jury, and the jury alone, their finding is not only entitled to the highest weight, but is conclusive on appeal from the order of a trial court refusing to grant a new trial, unless the record affirmatively shows that by their verdict the jury did a palpable wrong.—4 Mayfield's Dig. 315, § 63, and authorities cited.

We cannot say that, in this case, the jury were guilty of a palpable wrong, and it follows that the judgment of the court below must be affirmed.

Affirmed.