[Birmingham Railway, Light & Power Co. v. Demmins.]

# Birmingham Railway, Light & Power Co. *v.* Demmins.

## *Injury to Horse and Vehicle.*

(Decided Dec. 9, 1911. Rehearing denied Jan. 30, 1912.
57 South. 404.)

1. *Negligence; Wantonness; Contributory Negligence.*—Contributory negligence is no defense to an action for wanton misconduct.

2. *Same; Contributory Negligence; Pleading.*—In order to be available as a defense contributory negligence must be specially pleaded.

3. *Pleading; Alternate Pleas.*—If either averment of an alternate plea is insufficient, the demurrer to the whole plea is properly sustained.

4. *Witnesses; Examination; Responsiveness.*—Where a witness was asked how another appeared after an accident, his answer that he said that he had been asleep was properly stricken as not responsive.

5. *Same; Impeachment; Predicate.*—Where the witness was not a party to the action, and no predicate has been laid for his impeachment it was proper to exclude testimony offered to contradict him.

6. *Appeal and Error; Review; Exclusion.*—Where the trial court was not advised as to what was expected to be proved by the question the exclusion of the question as to what the driver of the vehicle said immediately after the accident, was not reviewable.

7. *Same; Exceptions; Necessity.*—In the absence of an exception the court will not review the exclusion of evidence.

8. *Same; Harmless Error; Evidence.*—If the record shows that the appellant was not prejudiced thereby, the exclusion of relevant evidence will not work a reversal.

9. *Same.*—Where the action was against a street railroad company for damages to a vehicle caused by a collision with its car it was not prejudicial error to exclude evidence that when the car came within a few feet of the vehicle there would have been no collision had the driver maintained his course, since the company had been permitted to show that the car extended beyond the rail two and one half feet, and that the vehicle was at least three and one half feet from the track, when the driver turned towards it.

10. *Same; Submission of Issues.*—Where the jury allowed actual damages only, no prejudicial error was committed by a submission to the jury of the question of wantonness, and the recovery of punitive damages.

11. *Charge of Court; Defect; Remedy.*—Where the oral charge of the court contained elliptical expression which might mislead the jury the remedy is to ask a written charge explanatory thereof.

12. *Same; Covered by Those Given.*—It is not error to refuse instruction covered by written instructions already given.

13. *Same; Conformity to Issue.*—Where there is no plea setting up the defense of contributory negligence, charges on contributory negligence are properly refused.

14. *Street Railways; Negligence; Pleading.*—Where the action was against a street railway company for damages for injury to a vehicle caused by a collision with one of its cars, pleas asserting that a certain person was, with plaintiff's consent in charge of the vehicle, and was guilty of negligence contributing to the injury, were not sufficient in averment to show that such person was in charge of the vehicle as a bailee.

15. *Same.*—Where the action is for collision between a street car and plaintiff's vehicle, which was being driven by another, a plea asserting that the driver negligently drove it onto the track or dangerously near thereto without looking or listening for the car, and the car was going so fast that it was impossible to stop it before it struck the vehicle, was demurrable for a failure to show that the proximity of the car when the driver drove upon or near the track, was such as to render the act of the driver negligent.

16. *Same; Right in Streets.*—One driving a vehicle on a street railway track which is a part of the street, is not a trespasser, and where the street is too narrow for a vehicle and a car to pass at the same time, they have equal rights, and it is the duty of both the driver and the motorman to avoid injury.

17. *Same; Motorman's Duty.*—Where defendant's motorman saw plaintiff's vehicle on or dangerously near the track going in the same direction as the car, and if on account of the vehicle being a closed vehicle, and on account of rain, the driver did not appear to be aware of the car's approach, or if the driver was driving in disregard thereof, it was the duty of the motorman at once to place the car under his control so that he could stop it immediately if necessary.

18. *Same; Negligence; Jury Question.*—Under the facts in this case it was a question for the jury as to whether the car was run by its motorman at an excessive rate of speed.

19. *Same.*—The evidence examined and held insufficient to show as a matter of law that the motorman had a right to assume that the driver would not drive close enough to the track to cause a collision.

20. *Same; Burden of Proof.*—Section 5476, Code 1907, puts the burden on the street railway company to show that it was not negligent where the action is for damages for collision with a vehicle on its track.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by Tom Demmins against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The following are the pleas discussed in the opinion: (7) "For further answer to plaintiff's complaint as amended, and each count thereof, separately and severally, the defendant says that, at the time said car ran upon or against the vehicle mentioned in the complaint in said cause, one Robert Johnson was by and with consent of the plaintiff in charge and control of said horse, vehicle, and harness mentioned in the complaint, and said Robert Johnson was himself guilty of negligence which proximately contributed to the damage alleged in the complaint, which contributory negligence consisted in this: Said Robert Johnson negligently caused or allowed said vehicle, harness, and horse to go upon, across, or dangerously near said defendant's railroad track, and in dangerous proximity to said car, which was then and there being operated on said track, without first looking and listening for said car, then and there approaching on said track, and in dangerous proximity to him." (8) Same as 7, down to and including the words "consisted in this," and adds: "Said person, having looked and seen said car approaching in dangerous proximity to him, nevertheless thereafter negligently caused or allowed said horse, when attached to said vehicle by means of said harness, to go upon or dangerously near said track, in front of said car, after having seen that said car was fast approaching said vehicle." (9) Same as 7, down to and including the words "consisted in this," and adds: "Said person, having been warned of the near approach of said car, nevertheless thereafter allowed said horse, which was attached to said vehicle by said harness, to go upon or dangerously near the said track, in dangerous proximity to said approaching car; said Johnson having charge and control of said vehicle by and with the consent of defendant." (10) Same as 7, down to

and including the words "consisted in this," and adds: "Said Johnson, while acting in the line and scope of his employment, negligently caused said horse, while attached to said vehicle by means of said harness, to go upon, across, or dangerously near the said railroad track, without first looking or listening for said car, which was then and there approaching the said place where said Johnson so caused said horse to go upon, across, or dangerously near said track, at such a rate that it was impossible to stop said car before it struck said vehicle."

The demurrers were: "The plea states contributory negligence in the alternative; that plaintiff is not sufficiently shown to be responsible for the alleged contributory negligence; that it does not sufficiently appear that there was any contributory negligence which proximately contributed to the injuries suffered by the plaintiff; that the second count was for wantonness; that the facts averred are not sufficient to amount to negligence as a matter of law; that the pleas are conclusions of the pleader, are not sufficiently specific, and raise an immaterial issue."

The following charges were given at the request of the plaintiff: (1) "If a car operated by a street car company upon a public street in Birmingham strikes and injures the property of another, there is a prima facie presumption that the street car company operating the car was guilty of negligence in so injuring the property of another, and the burden of proof is upon the street car company in that event to acquit itself of negligence." (2) "There is no issue of contributory negligence or not, if the jury are reasonably satisfied from the evidence that plaintiff's complaint, or either count thereof, be true, the court charges the jury that the jury must find for the defendant." (3) "If the jury

are reasonably satisfied from the evidence that either count of plaintiff's complaint is true, then the jury must find for the plaintiff, whether the driver of the hack was guilty of contributory negligence or not."

The following charges were refused to the defendant: (5) General affirmative charge. (6) "If you believe the evidence in this case, you cannot award plaintiff anything for damages." (10) "The mere fact that a vehicle in charge of a person is injured on a public street in an incorporated city, by being struck by a street car on such street, does not raise a presumption that such injury was proximately caused by the negligence of those operating the car." (12) "The mere fact that a vehicle is struck by a street car on a public street in the city of Birmingham does not raise a presumption that it was struck by reason of the negligence of the person or persons in charge of the car." (14) "The burden of proof in this case is on the plaintiff to reasonably satisfy you by evidence that the injuries inflicted on his property were proximately caused by the negligence of the conductor and motorman in charge of the car which struck said vehicle, or by the negligence of one of them." (15) "If you are reasonably satisfied from all the evidence in this case that the motorman in charge of the car that struck plaintiff's vehicle was keeping a diligent lookout for obstructions on the track in front of said car, and that said vehicle and horse came upon said track suddenly and that said motorman immediately after seeing them make the first move that indicated that they would go upon said track, used all the means at his command and did everything in his power to stop said car, until it was stopped, you must find for the defendant." (16) "If you are reasonably satisfied from all the evidence in this case that the motorman in charge of the car that

struck plaintiff's vehicle was keeping a diligent look-out for obstructions on the track in front of said car, and that said vehicle and horse came upon said track suddenly, and that said motorman, immediately after seeing them make the first move that indicated that they would go upon said track, used all the means at his command and did everything in his power to stop said car, until it was stopped, you must find for the defendant." (18) "If you are reasonably satisfied from the evidence in this case that, when the car that struck plaintiff's vehicle turned into Avenue B, plaintiff's horse and vehicle were in such a position as would have permitted the car to have passed them without coming in contact with either the horse or vehicle, and were going along said Avenue B towards Seventh street, and that there was nothing to indicate to the motorman in charge of said car that the position of said vehicle and horse would be changed, so as to cause said car to come in contact with said vehicle and horse, then the motorman had the right as a matter of law to assume that the position of said vehicle and horse would not be changed before said car would pass them." (19) "If you are reasonably satisfied from all the evidence in this case that, when the car that struck plaintiff's vehicle turned into Avenue B, plaintiff's horse and vehicle were going along Avenue B towards Seventh street at such a distance from the track on which said car was being run as would have permitted said car to have passed them without coming in contact with any of plaintiff's property, and that there was nothing to indicate to the motorman in charge of said car that said horse and vehicle would go any closer to said track before they were passed by said car, then the motorman had the right as a matter of law to assume that said vehicle and horse would not go upon or sufficiently near said track to

[Birmingham Railway, Light & Power Co. v. Demmins.]

prevent said car from passing them without coming in contact with either of them; and if you are further reasonably satisfied from the evidence that the said motorman was keeping a diligent lookout for obstructions on. or near said track, and that, when he saw the first movement of said vehicle and horse indicating or tending to indicate to him that they would go upon or in the direction of said track, he immediately used all the means possible in an effort to stop said car, and did everything in his power to stop the same, until it was stopped, you must find for the defendant."

TILLMAN, BRADLEY & MORROW, and JOHN S. STONE, for appellant. The court erred in sustaining demurrer to the 7th plea.—*B. R. L. & P. Co. v. Oldham,* 141 Ala. 199; *Anniston E. & G. Co. v. Rosen,* 159 Ala. 202. For the same reason the court erred in sustaining demurrer to the 10th plea.—*B. R. L. & P. Co. v. McLean,* 162 Ala. 658; *Pace v. L. & N.* 166 Ala. 523; *L. & N. v. Richards,* 100 Ala. 366. Counsel discuss assignments of error relative to evidence, and insist that it was entitled to show that the vehicle was far enough away from the car to have missed it if the driver had kept on the way it was going.—*B. R. L. & P. Co. v. Randle,* 149 Ala. 544. Counsel discuss assignments of error relative to charges given and refused, but cite no authority except as to the 18th charge, to which they cite—*Anniston E. & G. Co. v. Rosen, supra.*

BOWMAN, HARSH & BEDDOW, for appellee. Pleas 6 and 7 were not sufficient in that they fail to show whether the driver was a bailee or a servant, or whether he had misappropriated the vehicle. —*Gov. St. Ry. v. Hanlon,*. 53 Ala. 71; 29 Cyc. 542. For like reasons pleas 8 and 9 were ob-

jectionable, as well as plea 10. Each alternate averment and plea must be sufficient, or the whole plea is demurrable. What the driver said after the accident was not a part of the res gestae.—*Tenn. R. T. Co. v. Kavanaugh,* 93 Ala. 330; *R. R. Co. v. Hammond,* 93 Ala. 181; *R. R. Co. v. Pearson,* 97 Ala. 211; *Baker v. Drake,* 148 Ala. 513; *R. R. Co. v. Womack,* 84 Ala. 149. The defendant was permitted to show the overhang of the car, and the distance of the vehicle from the rail, and hence, it was not necessary for a witness to draw a conclusion as to how far away it was.—*B. R. & E. Co. v. Jackson,* 136 Ala. 285. Where no exception is taken to evidence, it will not be reviewed on appeal. The oral charges of the court were not objectionable.— *B. R. & E. Co. v. Pinckard,* 124 Ala. 372. If the charge fairly states the law as a whole, single portions cannot be made the basis for reversal.—*So. H. Co. v. Standard Co.,* 165 Ala. 582. There was sufficient evidence to require submission of the question of wantonness.—*B. R. & E. Co. v. Pinckard,* supra. Section 5476, Code 1907, is applicable.—*L. & N. v. Anchor,* 114 Ala. 509; *B. M. R. R. Co. v. Jacobs,* 92 Ala. 187; *Bir. So. Ry. Co. v. Powell,* 136 Ala. 242. Counsel discuss other charges, but without further citation of authority.

DE GRAFFENRIED, J.—This suit was brought by appellee against the appellant for damages he alleges in his complaint he sustained by reason of the negligence of the appellant's servants while acting in the line of their employment in the management of an electric car. There were two counts to the complaint, one alleging that the damages were caused by the negligence, and the other by the wantonness of appellant's servants or agents. The appellee's theory was that, while a hackman in his employ was driving one of his closed hacks

along one of the streets of the city of Birmingham, and, at the time of the injury, was driving upon the track of appellant, one of appellant's electric cars, traveling behind the hack and upon the same track and in the same direction and at a greater rate of speed, through the negligence of the motorman and conductor of the car, or one of them, ran into the hack and caused the damage complained of; that it was raining at the time; and that the driver, being in a closed hack, knew nothing of the approach of the car, and that, if he did know of its approach, and was himself negligent in being on the track, nevertheless, that such *negligent act* was a mere *condition* upon which appellant's negligence, after the discovery of the situation by said servants or one of them in permitting the car to run into appellant's hack, operated as the efficient, proximate cause of the injury. The appellee's theory was, also, that the car was permitted to run into and injure appellee's property through an act of wantonness on the part of said servants or one of them.

Appellant's theory was that the hack and the car were traveling in the same direction as above stated, but that, when the servants of appellant first came in sight of the hack, it was not on the track of appellant, but on one side of it and sufficiently *far* from the track for the car to have passed it without injury; that appellant's servants sounded the gong and blew the whistle to apprise the hackman of the approach of the car, which was then traveling at such a rate of speed as was reasonable and warranted by the surrounding circumstances; but that, either because the hackman was asleep or drunk, or for some other reason which was unknown and could not have been known or reasonably anticipated by appellee's servants, the hackman, just before the car reached him, drove upon the track; that when

this occurred appellant's servants did all that could possibly be done to stop the car and avoid the injury; but that the car. could not be stopped in so short a space; and that the injury was the inevitable result of said negligent act of appellee's hackman and was in no way due to the negligence of appellant's servants.

1. There were a number of special pleas to the complaint, demurrers to all of which were sustained, and the case was tried upon the general issue. The action of the trial court in sustaining the demurrers to each of the special pleas is here assigned, separately, as error. The pleas were skillfully drawn, and we cannot indulge the presumption that the defects existing in any of them were due to the inadvertence of counsel. While it may appear that their defects were strictly technical, they were, as we have said, drawn by some one eminently versed in all the requirements of the art of pleading, and a slight defect in the work of art is frequently more glaring and more disastrous in its results upon the particular work than a gross imperfection in some production of a clumsy amateur. In other words, each special plea was evidently advisedly filed in the case for the purpose of presenting the question as to whether its alleged defects destroyed its efficacy as a perfect plea in bar to the right of the appellee to recover the damages alleged to have been sustained by him in the manner stated in the complaint.

Each plea is an alleged plea of contributory negligence, and none of them is available, on demurrer, as a plea to the second count, which charges wantonness. Were any of the pleas available on demurrer as an answer to the first count in which only simple negligence is alleged?

Each plea alleges that the hackman "negligently went upon or dangerously near said track," or that he "negli-

gently went upon, across, or dangerously near" said track. As the defense is made by each plea in the alternative, if, as to either of its alternative averments, it was subject to the demurrer, the demurrer to the whole plea was properly sustained. The appellant has waived its first, second, third, and fourth assignments of error and presents no argument in support of its assignment of error as to plea 6, and we will consider the questions only as to the sufficiency of pleas 7, 8, 9, and 10.

The seventh, eighth, and ninth pleas seek to raise the question as to whether, when property which is in the hands of a bailee is injured through the negligence of another, the negligence of the bailee proximately contributing to the injury, the bailor can recover the damages growing out of such injury. The most intelligent discussion that we have been able to find upon this subject is to be found in the case of *Illinois Cent. R. Co. v. Sims,* 77 Miss. 325, 27 South. 527, 49. L. R. A. 322. In that case the court held that where property is in the possession of a bailee and, *while being used in accordance with the terms of the bailment,* is injured by a third party, and the bailee's negligence contributes to the injury, his negligence is imputable to the bailor.

We refer to the above case, not for the purpose of indicating our views as to whether the decision in that case is or is not a proper statement of the law, but for the purpose of pointing out the fact that neither of the pleas under discussion is brought within the terms of the rule which appellant invokes. In neither of the pleas is it averred that the hack was being used by its driver in accordance with the terms of the bailment, and the demurrer to each of said pleas was therefore properly sustained on that ground. While plea 7 avers that Robert Johnson was, with the knowledge and consent of ap-

pellee, in charge and control of said hack and horse, it may be, so far as the allegations of the plea are concerned, that Robert Johnson was a liveryman, and as such was in charge and control of the horse and hack to keep them for appellee, without authority to drive them upon the streets of Birmingham. Pleas 8 and 9 do not aver that appellee knew that Johnson was in possession or control of the horse and hack, and, so far as the allegations of those pleas are concerned, it may be that Johnson had stolen the horse and hack from appellee.

Plea 10 was subject to demurrer because it fails to show that the *proximity* of the car to the hack when its driver, without looking or listening, drove "across, upon, or dangerously near the track," rendered the act of the hack driver, in so doing, negligence. The plea says that the car was then and there approaching the place at such a rate that it was impossible to stop said car before it struck said vehicle. It may be, from aught that appears in the plea, that the car was 200 yards from the hack when it turned "dangerously near, upon, or across the track," and that the car was then running at the rate of 50 miles an hour around a curve, and that it could have been neither seen nor heard by the driver if he had "looked and listened." While the plea says that Johnson *"negligently* caused said horse while attached to said vehicle to go upon, across, or dangerously near the defendant's track without looking or listening for said car, which was then and there approaching said place," it may be, so far as the allegations of the plea are concerned, that, if the driver had looked and listened, he would have neither seen nor heard anything indicating that he did not have ample time to cross before appellant's car reached him, and that the entire danger was due solely to the high and excessive rate of

speed of a car of which the driver could not, by listening and looking, have informed himself. In other words, the plea fails to show with sufficient certainty such a condition as rendered it a duty of the driver not to go near, upon, or across said track at the time mentioned in the plea if he had looked or listened. "A driver has the right to cross a street railroad track, although he may see a car in the distance, if he may reasonably suppose he can cross before it reaches him."—*B. R., L. & P. Co. v. McLain*, 162 Ala. 658, 50 South. 149.

2. During the progress of the trial, a witness was asked as to how the hackman appeared immediately after the accident. Answering the question, the witness answered, "He got out and looked like he had been asleep or something, and said he had been asleep." The latter part of the answer was, upon motion, properly excluded from the jury because it was not responsive to the question. Thereupon the same witness was asked what the hackman said immediately after the accident. The court refused to allow the witness, on objection of appellee, to answer the question, and appellant reserved an exception. As appellant failed to inform the court *what* he expected to prove the hackman said, the court was unable to say whether the testimony thus sought to be elicited was or was not relevant. The trial court, therefore, will not be put in error for such refusal. It may be that the intention was to offer testimony to the effect that the hackman said he was asleep when the accident occurred; but it is possible that the testimony would have shown that he said *more* than that, and the appellant should have informed the court exactly what he did expect to prove, so that the trial court could have, before the witness answered the question, determined whether such testimony was relevant or material. The practice of admitting irrelevant evidence and after-

wards excluding it from the jury has been frequently condemned by the courts, as it often tends to prejudice the jury against the party. against whom it is offered. —*Green v. State,* 96 Ala. 32, 11 South. 478; *Griffin v. State,* 90 Ala. 600, 8 South. 670. It is argued by counsel for appellant that, if proof that the hackman said that he was asleep when the hack was struck had been allowed to go to the jury, such testimony would have tended to contradict his testimony as to what he was doing from the time he turned into the avenue where the injury occurred until the time of the collision. It is a sufficient reply for us to say that the hackman was not a party to this suit, and that appellant, when he was examined as a witness laid no predicate for his contradiction or impeachment by asking him if he did not say, immediately after the collision, that he was asleep; and that the only possible theory under which such testimony could be admissible, in the absence of such predicate, was that it was a part of the res gestae. As there was no plea of contributory negligence, we cannot see that the fact that the negligence of the hackman may or may not have contributed to the injury was available to appellant.

In this connection we dispose of the eighteenth assignment of error by stating that it presents nothing for our consideration because no exceptions were reserved, in the court below, to the exclusion of the court, on motion of appellee of the evidence referred to in said assignment of error.

3. Some exceptions were reserved upon the trial for our consideration, going to the action of the trial court in refusing to allow the appellant to prove that when the car came in sight of the hack, and up to the time it came up to within a few feet of the hack, "the car would

have missed him if he had kept going the way he was."
It is a familiar rule that, where the record plainly shows
that no error was done the party complaining by the
exclusion of certain evidence, the action of the trial
court, in excluding such testimony, even if relevant, will
not operate to work a reversal of the case. The testi-
mony of the appellant tended to show that the car ex-
tended beyond the rails on each side—"the overhang of
the car"—for a distance of 2½ feet, and that the hack
was, at the time it is claimed to have turned in the di-
rection of the track, a distance of at least 3½ feet from
the track. If this was true, the car, but for the fact
that the hack changed its direction, would have missed
the *cab* by one foot. As the court permitted *this* evi-
dence to go before the jury, we cannot see how appellant
was prejudiced by the court's refusal to allow the wit-
ness to place the evidence in a different form and say
the "car would have missed him if he had kept going
in the direction he was."

In addition to the above, one of the witnesses for ap-
pellant—the motorman—testified (and *that* evidence
remained with the jury) : "The cab was not in the path
of the car at that time. The horse turned right in front
of the car just before I got to it." In the case of *Bir-
mingham R., L. & P. Co. v. Randle,* 149 Ala. 544, 43
South. 355, *after* the witness had stated the distance,
in feet, the deceased was from the track when he first
saw him near the track, it was held that it was *compe-
tent* for the witness to state that "the car would not
have struck him in passing him at that distance from
the track," and we think that a careful analysis of the
reasoning of the court in that case will convince the
most skeptical that the action of the trial court made
the basis of this assignment of error does not constitute
reversible error.

4. Under the appellee's evidence, if it was believed by the jury, his hack was on the track of the appellant when its car came in sight of the hack in a business section of the city of Birmingham where the street on the side on which it was traveling was so narrow that hacks and other vehicles out of necessity used, in passing up and down the street, the track of appellant, and that appellant's servants in charge of the car, seeing the driver's position, and knowing that it was raining and that the driver was in a closed hack and was driving in the same direction as that in which the car was traveling, were disregardful of their duties in the premises and needlessly so ran the car at such a rate of speed as to run into the hack and cause the injury complained of. A person who drives a hack on the tracks of a street railway for a legitimate purpose is not a trespasser. The rights of the public require that the cars of a street railway shall not be unreasonably delayed because of the conduct of others in the use of the streets, but the law does not confer upon the motorman of a street car the right to enforce his right of passage through a street by running his car over a person making even a negligent use of the right of way.—Nellis on Street Railways (2d Ed.) vol. 2, §§ 388, 389.

Where the street is too narrow for a vehicle and a street car to pass through it at the same time, it is evident that a driver of a vehicle and an operator of a street car have equal rights of passage, and upon each the law devolves the same duty as to the avoidance of injury.—B. R., L. & P. Co. v. Oldham, 141 Ala. 195, 37 South. 452, 3 Ann. Cas. 333.

Where a car is traveling down a street which is wide enough for vehicles to pass the car without injury, and the motorman or other person in control of the car sees a vehicle upon or dangerously near the track, the car

must be operated at such a rate of speed that, if the ve-
hicle remains upon or dangerously near the track, the
car may, by the application of proper appliances, be
stopped in time to prevent injury if that becomes neces-
sary to avert injury.—*Rosen's Case,* 159 Ala. 195, 48
South. 798, 133 Am. St. Rep. 32.

The above is stated subject to the qualification that
a motorman is not necessarily obliged to stop his car
when he sees a vehicle ahead of him on or in dangerous
proximity to the track, but he is required to keep his
car under proper control and running at such a rate of
speed, when he does see a vehicle upon or dangerously
near the track, that, if he ascertains that the driver is
*ignorant or heedless* of his approach, he may have suf-
ficient time within which to stop the car and prevent a
collision.—*Schneider v. Mobile L. & R. R. Co.,* 146 Ala.
344, 40 South. 761. The rights of a street railway com-
pany to the use of a street, subject to the limitation that
its cars can run only upon its track, are the same as
the drivers of any other vehicle, and, when a car is over-
taking a vehicle on or dangerously near its track, a
proper regard for the rights of others requires that the
car be reduced to such control that it may be immedi-
ately brought to a standstill if necessary.—*Consolida-
tion Traction Co. v. Haight,* 59 N. J. Law, 577, 37 Atl.
135.

As we have above said, if a motorman, in charge of a
car, sees a vehicle on the track or dangerously near it,
and that the driver is either ignorant of the approach
of the car or driving without regard to it, it is the duty
of the motorman to so regulate the speed of his car
as to be able to immediately stop it, and to actually
stop it, in time to prevent injury, if that becomes neces-
sary, and, if he fails to do so and damage results by rea-
son thereof, the railway company is liable therefor. In

such a case, if the vehicle is on or dangerously near the track through the negligence of the driver, such negligence is a *remote,* not proximate, cause of the injury; it is but the condition upon which the subsequent negligent act of the motorman or other person in charge of the car operated as the direct, efficient, proximate cause of the injury. "We have often held that if the plaintiff's peril was discovered in time to avoid the injury by the exercise of due care on the part of the defendant, and the injury was the result of its failure to perform its duty in this respect, plaintiff would be entitled to recover, although he may have been guilty of culpable negligence in the first instance."—*L. & N. R. Co. v. Webb,* 97 Ala. 308, 12 South, 374; *L. & N. R. Co. v. Hurt,* 101 Ala. 34, 13 South. 130; 7 A. & E. Ency. Law, p. 382, . 3.

It is therefore manifest that if the motorman in charge of appellant's car saw appellee's hack on or dangerously near the track and going in the same direction as the car, that it was a closed hack, and that it was raining at the time, and there was nothing to indicate that the driver of the vehicle was aware of the approach of the car, or if it appeared that he was driving regardless of the fact that the car was approaching, it was the duty of such motorman to have at once reduced the speed of his car and to have placed it under such control that he could at once stop it if necessary. And if the street in which the hack was being driven was too narrow for the car to have passed the hack in safety, then it was the absolute, imperative duty of the motorman, when he discovered the hack in the street, whether the hackman was aware or mindful of the approach of the car or not, to have at once so placed his car under control and to have so reduced its speed as to have prevented the collision.

There was evidence tending to show that at the time of the injury the car was running at the rate of from six to eight miles an hour. While the evidence is in conflict as to whether the car would have passed the hack in safety but for the fact that the horse turned across the track just before the collision, all of the evidence showed that, if the hack was not on the track, it was in close proximity to it, and that the space for vehicles between the track and the curbing of the sidewalk was narrow. Whether, under 'all the circumstances surrounding the parties, the car was run by its motorman at an excessive rate of speed, was not a question of law for the court, but a question of fact for the jury. What would amount to a reasonable rate of speed in one place or under certain conditions might, in another place or under other conditions, amount to an excessive and dangerous rate of speed.—Nellis on Street Railways, vol. 2, p. 347.

There was no plea of contributory negligence in the case, and it is evident, therefore, that the trial court committed no error in giving the last two charges which the appellee requested it in writing to give to the jury, and that it was free from error in refusing to give to the jury charges 5, 6, 15 and 16.

6. While there was evidence in the case from which the jury could have inferred that the hack could have been passed by the car without a collision if the horse had not been turned across the track, nevertheless there was evidence from which the jury also had the right to infer that the hack was in *dangerous* proximity to the track from the time the car came in sight of it until the collision occurred; that its driver was proceeding without regard to the approach of the car; and, from the circumstances, that the motorman knew or could reasonably have discovered that he was heedless of its approach.

In fact, there was evidence that the hack was so close to the side of the track that the car would not have missed it more than 12 inches if the horse had not, as appellant's evidence tended to show, turned across the track. We cannot, therefore, hold that, under the circumstances of this case, it can be affirmed as matter of law that the motorman had the right to presume, and to regulate his conduct upon that presumption, that the position of the vehicle and horse would not be changed after he came in sight of it so as to cause said car to come in contact with said vehicle and horse. "The operative is forbidden to rely upon the assumption that apparently adult persons or property, such as horses and vehicles in control of persons apparently adult, will leave, in time to avert injury, the track or in dangerous proximity to it, when the circumstances reasonably indicate that the party imperiled, or likely to become so, is unconscious thereof."—*Rosen's Case, supra.*

It is therefore our opinion that the trial court properly refused to give to the jury charges 18 and 19, which the appellant in writing asked the court to give to the jury.

And, in this connection, we may add that the court properly refused to give to the jury charge 13, which appellant in writing requested it to give to the jury. It had already, at the request of the appellant, given to the jury written charge 9, which was similar in all respects to said charge 13.

7. Section 5476 of the Code, so far as the burden of proof is concerned, applies to street railways, and where any person or stock is killed or injured, or other property damaged or destroyed by a street car of a street railway, the burden of proof, by virtue of said section, is upon the street railway company to show that there was no negligence on the part of the company or its agents.

—*Selma Street & Suburban Ry. Co. v. M. E. Martin,*
2 Ala. App. 537, 56 South. 601.

It follows that the court properly gave to the jury
charge 1 requested in writing by appellee, and properly
refused charges 10, 12, and 14., which the appellant re-
quested it to give to the jury in its behalf.

8.  The question as to whether, under the facts of this
case, the court erred in submitting the question as to
whether there could be a recovery for punitive damages,
is immaterial. It is obvious that, under the evidence as
to the amount of the injury, the jury, by their verdict,
only allowed appellee the damages actually sustained
by him.—*City of Eufaula v. Simmons,* 86 Ala. 515, 6
South. 47.

9.  When the oral charge of a court contains an
elliptical expression or a sentence which might mislead
the jury, the true remedy of a party aggrieved thereby
is to ask a written explanatory charge.—*B. R. L. & P.
Co. v. Murphy,* 2 Ala. App. 588, 56 South. 817.

We think that we have indicated, in what we have
above said, that in our opinion the oral charge of the
court, if subject to criticism, was subject to criticism
only because it may have possessed a misleading ten-
dency, and that this judgment should not be reversed
on that account.—2 Mayfield's Dig. p. 573, § 214.

We have, in the above opinion discussed all of the
matters insisted upon in the briefs of appellant's coun-
sel in which there appears any merit, and, as we are of
opinion that no error was committed by the court on the
trial of this case which was in any way prejudicial to
the rights of appellant, we are therefore of the opinion
that the judgment of the court below should be affirmed.

Affirmed.